MORGAN v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 5828.   Decided April 2, 1937.   (66 P. [2d] 144.)

*H. D. Moyle* and *E. M. Bagley,* both of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *F. A. Trottier,* of Salt Lake City, for defendants.

FOLLAND, Chief Justice.

From a decision of the Industrial Commission of Utah denying compensation, plaintiff brought certiorari. The only question presented is whether, under the undisputed facts, plaintiff's accidental injury arose out of or in the course of employment. We conclude it did, and the decision of the Industrial Commission must be reversed.

Samuel Morgan, plaintiff, is and was the principal of the Davis County High School at Kaysville. On Sunday, February 2, 1936, at about 10 o'clock p. m., he was struck by an automobile and severely injured while walking on the public highway from his home to the high school. His purpose in going to the school at that time was to make up and mail his monthly report which was due at the office of the secretary of the district on Monday, and to transfer to the safe in the principal's office certain account books and keys. The account books had been left in a class room

earlier in the day and the keys were being carried by him at the time of the injury. There had been a dance at the high school building Friday night. It was customary on such occasions, because of a previous burglary after a dance, for the principal to remove from the safe in his office all money, account books, keys, and other valuable property. The keys were on a chain and were keys to practically all the rooms in the building except the principal's office. This property the plaintiff took home with him on Friday night. Ordinarily the property would have been returned on the Saturday following, but Morgan had a cold and remained at home Saturday. The monthly report should have been made up Friday or Saturday, but on account of the dance and Morgan's illness it was not done. On the afternoon of Sunday plaintiff went to the schoolhouse taking with him the chain of keys, account books, and other property intending to replace them in the safe in his office and to make up his report. After entering the building he found he had left his personal keys at home, including the key to the principal's office. Without entering the principal's office he could not proceed with his work. He thereupon placed the books and papers in a class room and returned to his home for the purpose of obtaining the key to his office. He carried the chain of keys with him because one of them locked the outside door of the building. He intended to return at once and complete his work. When he reached home he found lunch ready so he ate it. He was thereafter detained further by visitors who called and remained a good part of the afternoon and evening. He did various jobs around the home, such as assisting the occupants of an automobile which became stalled in the snow in front of his home, and also put his own car in the garage after it had become stalled in the snow. It was a stormy day, much snow had fallen, and he concluded he would not use his automobile further. The home was not free from visitors until about 10 o'clock, when Morgan left home on foot intending to return to the high school and finish his work carrying with him the chain of

keys as well as his own key to the principal's office. He had proceeded only a short distance when the accident occurred.

Much is made by counsel for plaintiff of the fact that plaintiff was carrying the keys which belonged to the school at the time of his accidental injury. This fact alone cannot impose a liability on the employer, as it was merely incidental to the main purposes of the journey to the school building. We have so held under similar facts. *Greer* v. *Industrial Commission*, 74 Utah 379, 279 P. 900; *Fidelity & Casualty Co.* v. *Industrial Commission*, 79 Utah 189, 8 P. (2d) 617. The fact that he was carrying the keys serves merely in explanation of the purposes of the trip.

The applicable rule is stated in *Kahn Bros. Co.* v. *Industrial Commission*, 75 Utah 145, 283 P. 1054, as follows:

"It is a general rule that injuries sustained while an employee is traveling to and from his place of employment are not compensable. An exception to this rule, however, is where an employee, either on his employer's, or his own time, is upon some substantial mission for the employer growing out of his employment. In such cases the employee is within the provision of the act. The mission for the employer must be the major factor in the journey or movement and not merely incidental thereto. *London Guarantee & Accident Commission*, 190 Cal. 587, 213 P. 977."

The question for decision here is the same as that in the Kahn Bros. Case, namely: Was plaintiff in the course of the execution of an errand or special mission on behalf of the employer at the time of the accident? Plaintiff went to the school building Sunday afternoon for the purpose of returning the account books and keys to their place and of making up his report. After reaching the building he could not proceed further with his task because the office key had been left home. If he had not left the key at home he would have completed his work before returning home for lunch. His return home was for the purpose of getting the key, not for the purpose of eating lunch or entertaining visitors. After reaching home, how-

ever, his errand on behalf of the purpose for which he left the school building was interrupted. The continuity of the trip was broken by the eating of lunch, entertaining of visitors, and doing the other things mentioned. He resumed his errand, however, when he finally left home with all the keys in his possession intending to go to the schoolhouse and finish the work that night. Under the holding of this court in the case of *Sullivan* v. *Industrial Commission*, 79 Utah 317, 10 P. (2d) 924, plaintiff would not have been in the master's business in doing any of the personal things at his home but would again attach himself to the master's mission or errand when he left home to travel toward the school. This, of course, on the assumption that the errand home was a substantial one for and in the interest of the employer. The fact that there was a break in the continuity of the errand does not change its purpose if, after plaintiff stepped aside to do personal acts he again resumed the errand. There is an entire absence of anything in the evidence from which it could be inferred that plaintiff made the trip from the school to his home, or again from his home to the school, for any personal reason or purpose. He was wholly intent on doing his duty on behalf of his employer. It seemed to be conceded at the oral argument that if plaintiff had, on finding he had left his key at home, sent the janitor or his secretary to his home for the key such messenger would be in the master's business. We cannot see that it makes any difference that the principal sent himself on such an errand. Had the janitor been the messenger and had he been delayed or diverted by reason of some pressing business of his own, he would be in the master's business when he again resumed the errand of procuring and returning the key. The view that the errand was in the master's business is well supported by the recent cases of *Kromley* v. *Board of Education*, 180 A. 546, 13 N. J. Misc. 627, and *Bergman* v. *Buffalo Dry Dock Co.*, 269 N. Y. 150, 199 N. E. 38. In the Bergman Case a night watchman required to punch signal boxes, using keys supplied by a telegraph company, found

his co-watchman had carried the keys home. He thereupon started to the co-watchman's home to obtain the keys when he was accidentally killed. The court held he was not outside the general duties of his employment in going for the keys and upheld an award of compensation to his dependents. Chief Judge Cardozo, speaking for the New York Court of Appeals, said:

"The decisive test must be whether it is the employment or something else that has sent the traveler forth upon the journey or brought exposure to its perils."

*Marks' Dependents* v. *Gray*, 251 N. Y. 90, 167 N. E. 181, 182; *Schwimmer* v. *Kammerman & Kaminsky*, 262 N. Y. 104, 186 N. E. 409; *Fleeger* v. *Nicholson Bros.*, 100 Ind. App. 103, 192 N. E. 842.

We conclude therefore that plaintiff was on an errand in the business of the master when he left the school building for the purpose of procuring his key which he had previously left home, and on his return from home to the school building. The fact that the journey was interrupted does not change the purpose of the errand. It is not the same as if he had not attempted to return to the school at all on Sunday, but returned in the ordinary course of going to his work on Monday morning.

The decision of the Industrial Commission is set aside and the cause remanded for further proceedings not inconsistent with this opinion.

EPHRAIM HANSON, MOFFAT, and LARSON, JJ., concur.

WOLFE, Justice (concurring).

I concur, but on different grounds. I think the result would be the same if Morgan had never been to the school on Sunday afternoon and the trip in the evening on which he was injured was his first trip to the school that day. The decision must rest on the principle that at the time of the

injury he was in his master's employment. What I have difficulty in seeing is how he can any more be in his master's employment because he was returning to the school than he would be if this trip on which he was injured was his first trip on that day to the school. If being on his master's business at the time of the injury depends on his having attached himself to that business earlier in the day and his home-coming was itself for the master, then I fear the staying at home for several hours may have broken that connection. But I do not think Morgan's case depends on any such previous connection with his employment on that day.

Those cases where a superior must largely direct his own orbit of work on behalf of his master are in a different category from the class in which an employee has a customary place to work and customary hours during which to work, and is under the orders of another as to when and where he shall work. Such workman daily attaches and dissevers himself from his employment. Where and when he shall work is strictly subject to, not his will, but the will of superiors. His employment ordinarily begins when he reaches the locus of the work. There are exceptions. See *Cudahy Packing Co. v. Parramore,* 263 U. S. 418, 44 S. Ct. 153, 68 L. Ed. 366, 30 A. L. R. 532; *Bountiful Brick Co. v. Industrial Comm.,* 68 Utah 600, 251 P. 555. But even in the cases where there is a customary place and customary hours to work, an employee on a special errand away from the factory at the request of his employer is within the course of his employment. And an accident occurring on an errand outside of hours specially or mainly for the employer is compensable. *Grieb v. Hammerle,* 222 N. Y. 382, 118 N. E. 805, 7 A. L. R. 1075.

In this case, Morgan, being the principal of the school, was largely sui juris. His master was the school district but he gave orders for it. His time and place of work was somewhat subject to his own selection. When he was on a special errand within the range of his duties by his own ordering, it was as if he had sent a teacher or the janitor on a special

errand on school work. It was not the case of his having to rejoin his employment by reaching the locus as on regular school days. When he started from home on Sunday night on a special work for the school, he joined his locus immediately upon leaving his house for the school. It is as if he had left his home to mail a report to the school board. The fact that it was special and solely or mainly on the business of the school and not incidental to his own purposes differentiates it from the case where he is on the way customarily to rejoin his employment but has not yet done so. Had he postponed the work until the next morning and while carrying his keys while customarily on his way to rejoin the locus of his work, the case would be different. *Kromley* v. *Board of Education*, 180 A. 546, 13 N. J. Misc. 627; *Logue* v. *Independent School Dist.*, 53 Idaho 44, 21 P. (2d) 534. In the case of *Lake* v. *City of Bridgeport*, 102 Conn. 337, 128 A. 782, 784, it was held that a special policeman leaving his home under orders to report for duty was "on duty" upon leaving his home—differing from the regular policeman who came and went regularly. He, it was said, "was acting in obedience to the orders of his superior having jurisdiction to control his movements at the time of his injury."

In the instant case the claimant, himself a superior, put himself "on duty" when he left the house to carry out the purposes of his master on this special occasion. He was then in the course of his employment, which he would not have been had he been leaving his home to attach himself to his employment, the hours of which were blocked out by the school board. In this case, he himself, acting within the scope of his authority, blocked out for this special work his own orbit of employment. If the manager of a business whose hours of work were largely self-imposed, left his house at night to meet a customer at a hotel on his master's business and was injured en route, he could recover compensation. But if, in the morning, he was going to the office and before he got there was injured, he could not recover compensation. In the one case his errand special was itself his

master's business. In the second case his trip was not in the master's business but to attach himself to it. If, in the first case, he had left home to meet the customer at his master's place of business, the result would not have been different. Nor in the instant case does it make any difference that Morgan's work lay at the school. If he was in the process of going to the post office to mail a report to the school board, it would have been in the course of the master's business. He is on a special errand to meet his work at the school, like a manager on a special errand to meet a customer at the office, and by the same token both are in their masters' business during the entirety of the errand.